UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

_____

PRASANNA SANKARANARAYANAN,           )
                                     ) CASE NO. C24-01745-RAJ
                 Petitioner,         )
v.                                   ) Seattle, Washington
                                     )
DHIVYA SASHIDHAR,                    ) November 22, 2024
                                     ) 11:43 a.m.
                 Respondent.         )
                                     ) MOTION TO AMEND
                                     ) via telephone
                                     )

_____

VERBATIM REPORT OF PROCEEDINGS
BEFORE THE HONORABLE RICHARD A. JONES
UNITED STATES DISTRICT JUDGE

_____

APPEARANCES:

  For the Petitioner:        Richard Min
                             Green Kaminer Min & Rockmore LLP
                             420 Lexington Avenue, Suite 2821
                             New York, NY 10170

                             Roni E. Ordell
                             Whitaker Kent Ordell PLLC
                             1200 Fifth Avenue, Suite 2020
                             Seattle, WA 98101


  For the Respondent:        Katelyn Skinner
                             Buckley Law PC
                             5300 Meadows Road, Suite 200
                             Lake Oswego, OR 97205

                             Sherri M. Anderson
                             Law Office of Sherri M. Anderson
                             9 Lake Bellevue Drive, Suite 218
                             Bellevue, WA 98005

  Reported by:               NANCY L. BAUER, CCR, RPR
                             Federal Court Reporter
                             700 Stewart Street, Suite 17205
                             Seattle, WA 98101

```
 1                 Court in session at 11:43 a.m.
 2    _____

 3          THE CLERK:  Good morning, everyone.  May I ask who is
 4    on the line?

 5          MR. MIN:  This is Richard Min on behalf of the
 6    petitioner.

 7          MR. ORDELL:  This is Roni Ordell on behalf of
 8    petitioner; co-counsel as well.

 9          MS. SKINNER:  Katelyn Skinner on behalf of respondent.

10          MS. ANDERSON:  And Sherri Anderson on behalf of
11    respondent.

12          THE CLERK:  Do we have Katrina Siepel?

13          MS. SKINNER:  No.

14          THE COURT:  All right.  Any other persons present on
15    the conference call?

16       All right.  This is the matter under Cause No. 24-1745,
17    Sankaranarayanan versus Sashidhar.

18       Who will be speaking on behalf of the petitioner?

19          MR. MIN:  Richard Min, Your Honor.

20          THE COURT:  Who will be speaking on behalf of the
21    respondent?

22          MS. SKINNER:  Katelyn Skinner, Your Honor.

23          THE COURT:  This is a petition for a motion to amend,
24    and let me hear from you, counsel.  And I'll tell you what my
25    concerns are.
```

 1          When you filed this original action, the relief that you

 2     sought was for, essentially, TRO-type relief, for the court to

 3     react immediately.  And I will note that the matter wasn't

 4     properly noted with this court, which caused some confusion in

 5     our clerk's office if the court were to treat this as an

 6     expedited motion under the Hague Convention, with the type of

 7     relief that you were seeking.

 8          But setting that aside, it's the court's expectation that

 9     when you file an action like this, the statute contemplates an

10     expedited proceeding.  But here we are, just a few days after it

11     was granted by this court, asking for extended relief.

12          This court needs to have some compelling justification.

13     You've got a host of things in terms of discovery, postponing

14     the schedule for expert witnesses to be identified, expedited

15     proceedings, but at the same time you're asking for an extended

16     date of continuance.

17          So tell me exactly where we are and what you've done by way

18     of communication with opposing counsel, because I have a

19     proposed order, but there's no participation by the respondent

20     yet.

21          MR. MIN:  Thank you, Your Honor.

22          Right, and we had initially filed for an extension before

23     opposing counsel came on, where we emailed with the court and

24     filed a proposed order before opposing counsel had come on

25     board.  And so, obviously, we'd like to meet and confer.

1      I will note we have reached out to opposing counsel, who we

2  share as adversaries on another case, throughout the week, and

3  we have not received a response, and they are, apparently, out

4  of office.  But we do want to acknowledge that we have not met

5  and conferred on this issue, Your Honor.

6      I will note, yes, these matters are to be expedited.  We're

7  not seeking a prolonged delay at all.  We're seeking a few extra

8  weeks just to make sure that this is not going to be a trial by

9  ambush; that, once we receive their answer, which is going to

10  be the -- it will set forth all of their allegations, we have

11  ample time to be able to rebut those allegations before an

12  evidentiary hearing.

13      I mean, if this evidentiary hearing was simply on our prima

14  facie case, I would not be concerned with going to trial

15  immediately.  But we do anticipate there will be affirmative

16  defenses and exceptions to raise, and, therefore, we believe we

17  would be at a disadvantage.  My client would be prejudiced if we

18  were to move to trial, essentially, a week after receiving their

19  answer.

20          THE COURT:  Counsel, why don't you, Mr. Min, explain

21  to the court what you need by way of what you contemplate by

22  your definition of "limited discovery."  What's that look like?

23          MR. MIN:  Sure, Your Honor.  I mean, we would be

24  asking -- and we've done this on, you know, a one-, two-week

25  basis -- turnaround basis.  But we'd be asking for some

1  documentation production, limited interrogatories, perhaps

2  depositions of some key witnesses that we believe can all be

3  conducted in a short period of time.  I mean, as we proposed in

4  our order, you know, we're looking -- if the court is

5  accommodating, we, obviously, are deferring to the court's

6  schedule, you know, late December, early January trial time.

7  And so we envision being able to do this in very short order,

8  which we have done in the past.

9      Also, the other thing that, I think, is just really

10  important is to have an expert disclosure schedule.  We would

11  need experts, if they're going to get experts, and we would need

12  to get their expert reports so that we can rebut those reports.

13      Your Honor, one thing I did forget to mention, although I'm

14  aware of the Your Honor's rulings on the pro hoc vice

15  application, and so this is not an impediment to trial, but I am

16  supposed to be out of the country on December 3rd.  If trial

17  were to proceed then, or at some other time, and I'm

18  unavailable, of course, you know, we will have a co-counsel from

19  my office or a partner from my office or someone to cover that,

20  and Mr. Ordell is, obviously, present as well, but I just wanted

21  to let the court know about that as well.

22      THE COURT:  Now, counsel, let's peel back your

23  generalized representation.

24      When you say "document production," what exactly do you

25  contemplate to seek by way of document production?

1          MR. MIN:  Well, we wanted to know, obviously, what

2     evidence they have for any of the allegations they intend to

3     raise.  And just because we anticipate they're going to raise

4     domestic violence allegations, we want to know if they have any,

5     you know, audio recordings, video recordings, photographs; if

6     they have any communications with third parties, you know, that

7     show contemporaneous communications about these abuse

8     allegations; you know, those sorts of documents.

9          Obviously, if there's a contention that Singapore was not

10     the official residence, then we'd want documents related to

11     their ties to the United States versus Singapore, any

12     communications related to the parties' intentions.

13          It's difficult to say exactly what we want, Your Honor,

14     which is part of the reason we're asking for the extension,

15     because we don't know what they're alleging yet, and until we

16     see their response and until we see their answer, we're not

17     going to know exactly what documents we need.

18          But those are the type -- generally speaking, those are the

19     type of documents we expect to ask for.  And, of course, if the

20     child is seeing a therapist and seeing an expert already, we

21     would want, you know, documents from the expert, that were

22     provided by the expert, that were produced by the expert or any

23     treating therapist.

24          THE COURT:  Okay.  And beyond document production, why

25     would we need to duplicate via interrogatories?  Because that's

1    just going to complicate it if the court gives any reasonable

2    period of opportunity for responding.  In other words, a general

3    representation, what is it that you need to go to trial, as

4    opposed to what would be convenient to go to trial?

5            MR. MIN:  Understood, Your Honor.

6        I mean, my thought on that is that, if we're doing

7    documentation production, and I think document production is, of

8    course, the most important thing, along with expert disclosure,

9    which is probably equally important.  You know, while we're

10   doing that, if we have that time to do that, then my desire

11   would be to, of course, use that same period of time without

12   adding any additional delay to do interrogatories and limited

13   depositions.

14       But, of course, Your Honor, I will always defer to Your

15   Honor's directives in terms of the scope of discovery.

16           THE COURT:  As far as you know right now, because

17   that's the next category of concern, who do you contemplate --

18   again, without having to respond.  You may think that that's

19   unfair, but I want to know if it's appropriate for me to grant a

20   continuance.

21       When you say "witnesses," what witnesses have you

22   identified or have reasonable basis to believe should be

23   witnesses to be deposed or interviewed?

24           MR. MIN:  Yeah.  Obviously, any experts that are

25   identified, we would want to be deposed.  And, of course, we

 1    can't identify those just yet ourselves.  And then we're

 2    thinking about the mother, of course, and then the maternal

 3    grandmother, someone who is now present, we understand, in

 4    Seattle, along with the mother.

 5           THE COURT:  And as far as your witnesses and any

 6    experts that you have, what number of witnesses do you believe

 7    would be necessary for you to present your case-in-chief?

 8           MR. MIN:  For our case-in-chief, we won't need any

 9    experts.  Truthfully, I think we wouldn't need any witnesses,

10    really, beyond the parties and, perhaps, one or two additional

11    fact witnesses.

12        But, again, you know, our case -- Your Honor, I want to

13    modify that slightly.

14        So our prima facie case is really three things pursuant to

15    the case law.  One is identifying and proving Singapore is the

16    country of official residence.  For that purpose, it is a very

17    factual question.  We would generally be relying on party

18    testimony, perhaps one or two very short deps.

19        The second prong of that test is whether or not custody

20    rights of Singapore were violated.  That typically is not

21    contested in this cases, because if Singapore is the country of

22    official residence, as a married couple with a child, you know,

23    generally, most parties recognize and most courts recognize

24    that, you know, they each have equal rights of custody.

25        But if that were to be contested, then we would probably

1  call a Singapore law expert to testify about Singapore laws

2  regarding custody and that people can't just move out of the

3  country without the consent of the other parent.  That should be

4  fairly short.

5      And then the third prong is exercising custody rights, just

6  meaning that you've kept up a normal relationship with the

7  child, you haven't abandoned the child.  And that, again, would

8  really only come down to party testimony.

9      So on our prima facie case, we don't believe it's that

10  complicated.  Maybe some limited expert testimony.  That's why I

11  say if it's simply going to be about our prima facie case, I

12  think we can move forward fairly rapidly.  But I expect there

13  will be at least two affirmative defenses or exceptions raised,

14  and that is where we would seek some additional time so that we

15  can adequately rebut those allegations.

16          THE COURT:  And what do you contemplate, from the best

17  you know, the duration and length of the trial?

18          MR. MIN:  Duration and length of trial, again, if it's

19  simply on our prima facie case, I think we can be concluded in a

20  day.  If there's affirmative defenses that are going to be

21  raised with expert testimony, then I think this is likely to be

22  a two- to three-day trial, at minimum.

23          THE COURT:  All right.  Anything else that you wish to

24  present to the court before the court goes to the respondent,

25  counsel?

 1              MR. MIN:  No.  Thank you, Your Honor.  I appreciate

 2    the time.

 3              THE COURT:  All right.  I'll hear from you,

 4    Ms. Skinner.

 5              MS. SKINNER:  Thank you, Your Honor.

 6         Our position is that this matter should proceed to trial on

 7    the date that Your Honor has set.  The petitioner has had this

 8    case ready, at least ready enough to file the petition, since

 9    October 25th, nearly a month ago.

10         There were criminal charges pending in Singapore against

11    the petitioner.  There are restraining order matters pending

12    against the petitioner in Washington State.  The petitioner knew

13    that there was going to be allegations of grave risk, as Mr. Min

14    had indicated there, and he should have been adequately

15    preparing this matter for trial in the last four weeks.  Why he

16    has not done so, perhaps he thought that he was going to get a

17    default or that my client wouldn't have enough funds available

18    to her to pursue a defense.  But here we are.

19         We're the ones who are just jumping into this case, but

20    we're ready to go, because the Convention requires that a

21    decision be reached within six weeks from the date of the

22    commencement.

23         And so as far as discussion from petitioner is gathering

24    evidence that they might need for trial, these are -- I would

25    say 90 percent of the documents are equally available to the

1    parties, because we're going to be looking to documents that

2    were filed in the Singapore courts, we're going to be looking to

3    documents that petitioner filed in India saying that India is

4    the place of residence of the child, and we're going to be

5    looking to documents in Washington State.  These are public

6    records and statements of the parties that are available to both

7    parties.

8        And so we would ask that this matter stay set on the

9    docket.  Mr. Min and I are both well versed in these cases, and

10   I think that we can work together to exchange discovery, at this

11   point, on an extremely expedited manner, as we do regularly.

12       My client would be prejudiced by a delay.  And then, of

13   course, she's going to be handing over the child's passport

14   later today, and so she's restricted in that sense.  She's also

15   restricted in the sense that these cases pending in Singapore,

16   in India, and in Washington State are all going to be put on

17   hold or in limbo until this Hague case is decided, so this

18   matter really needs to be decided in order for the parties to

19   move forward and for the child to have some stability and

20   permanency moving forward.

21       Thank you, Your Honor.

22           THE COURT:  Let me ask you some of the same questions.

23   Counsel has identified his suspicion about what your response or

24   defense will be, or affirmative defenses.

25       Can you articulate for the court?  I recognize that your

1  due date for filing a response isn't until November 27th, but it

2  would be of great value to the court for you to identify what

3  defenses that you plan on raising at this point in time.

4      Now, if you believe it's prejudicial to your client to have

5  to disclose it a few days ahead of time, let the court know.

6      MS. SKINNER:  Absolutely not.  We're prepared to let

7  the court know at this point.

8      As far as the defenses to petitioner's prima facie case, we

9  will be putting forth the argument that Singapore was not the

10 child's habitual place of residence, and I think the evidence

11 largely shows, by the petitioner's own words, that the parties

12 were temporarily in Singapore.

13     And so, again, the evidence that's going to support that

14 are largely statements by the parties in these court filings

15 that were made in Singapore and India.  And so we're going to be

16 objecting to the habitual residence prong.

17     We're not going to be objecting to the rights of custody.

18 We'd be objecting to the prong of actually exercising the

19 rights, because father fled Singapore once criminal charges were

20 brought against him, and did abandon the child, at that point,

21 when he fled to India.

22     And then as far as affirmative defenses, we will be arguing

23 the grave risk of harm, again, as petitioner has surmised, as

24 well as investigating the possibility of a mature-child

25 objection.

1    THE COURT:  And do you contemplate securing an expert

2 witness to testify in your case?

3    MS. SKINNER:  We do, Your Honor.  And I would have no

4 problem disclosing our expert's name at this point, but we do

5 have at least one lined up.

6    THE COURT:  And in terms of availability, if the court

7 were to grant some form of postponement or continuance, what

8 would be the availability of that witness?  Do you have any

9 out-of-town travel or any unavailability?

10    MS. SKINNER:  No, Your Honor.  If Your Honor would be

11 so inclined to allow our expert witness to appear remotely, I

12 believe that the availability would be open during that time,

13 Your Honor.

14    THE COURT:  Okay.

15   And then counsel didn't identify -- and the grandmother,

16 I'm assuming, is readily available?

17    MS. SKINNER:  Yes, Your Honor.

18    THE COURT:  And as far as production of any

19 documentary evidence, based upon what counsel articulated, do

20 you contemplate any objection to any requests that he's

21 identified, with a reasonable opportunity to meet and confer?

22    MS. SKINNER:  No, Your Honor.  Those documents all

23 sound relevant, and we would not have any problems or objections

24 in gathering those quickly.

25   Again, because there's litigation pending in Singapore,

1    India, and Washington, the parties -- at least my client -- has

2    already gathered a large portion of these documents.

3          THE COURT:  And would you have any objections to

4    producing those documents or, at least, the sources of how you

5    acquired those documents, the cause number or anything else?  It

6    seems like they'd be readily available to both parties, but is

7    there anything uniquely acquired, that you're aware of, that you

8    would need to produce, in light of counsel's request?

9          MS. SKINNER:  No, Your Honor.

10         THE COURT:  All right.  And is your client available

11   for deposition as well?

12         MS. SKINNER:  Yes, Your Honor.

13         THE COURT:  And in light of the court's previous

14   order, I trust that there is no reason to believe that your

15   client would be leaving this jurisdiction; is that correct?

16         MS. SKINNER:  No, Your Honor.

17         THE COURT:  It's not correct?  She's leaving the

18   jurisdiction?

19         MS. SKINNER:  Oh.  There's no reason to believe she

20   will be leaving, Your Honor.  She'll be staying and complying

21   with the court's orders in that regard.

22         THE COURT:  And trust the grandmother will be readily

23   available as well, correct?

24         MS. SKINNER:  Correct, Your Honor.

25         THE COURT:  All right.  Anything further that you'd

1    like to add, Ms. Skinner, on behalf of your position?

2         MS. SKINNER:  No, Your Honor.

3         THE COURT:  All right.  Let me hear from Mr. Min.  Any

4    rebuttal, sir?

5         MR. MIN:  Your Honor, no.

6         I mean, Ms. Skinner -- I mean, you know, the expert issue

7    alone, I think, is going to require time for us to rebut and

8    have our own expert witness, because one of the issues here is

9    going to be -- especially if they raise the mature-age

10   exception -- we're going to request, Your Honor, that our expert

11   have the same access to the child and to the sources of

12   information so that our expert can do our own evaluation.  And

13   so that's going to require some time after we receive their

14   expert record.

15        Your Honor, I think one question you did not ask them is

16   how many days they anticipate the trial lasting, as well, and I

17   think that -- based on what I'm hearing, I mean, I see at least

18   a two- to three-day trial.

19        THE COURT:  Ms. Skinner, let me hear from you.  What

20   is your contemplation for the estimated length of trial,

21   primarily for the defense?

22        MS. SKINNER:  Thank you, Your Honor.

23        As long as there are no -- it doesn't sound like there's

24   going to be any delay added to the trial or extension.  By

25   virtue of translators at work, I think we could get this done in

1    two days.

2            THE COURT:  And when you say "translators," first of

3    all, is your client fluent in the English language?

4            MS. SKINNER:  Yes, Your Honor.

5            THE COURT:  Does your client need the benefit of a

6    translator?

7            MS. SKINNER:  No, Your Honor.

8            THE COURT:  How about the grandmother?  Does she need

9    the benefit of a translator?

10           MS. SKINNER:  I don't have the answer for that at this

11   time, Your Honor.

12           THE COURT:  All right.  And are any witnesses that you

13   contemplate on calling, would they need the benefit of a

14   translator?

15           MS. SKINNER:  No, Your Honor.

16           THE COURT:  And, counsel, are you aware of any reason

17   why you think that we need to invoke an expert witness from

18   Singapore to define Singapore law regarding custodial issues or

19   the ability to remove a child without consent of the other

20   person or parent?

21           MS. SKINNER:  No, Your Honor.  We would be prepared to

22   stipulate to that prong of the analysis, Your Honor, without the

23   use of Singapore experts.

24           THE COURT:  Okay.  All right.  Thank you.

25        Mr. Min, it seems that this trial is considerably shorter

1   by way of what the court is going to permit by way of a long

2   delay, and I would have hoped that you would have secured or

3   contemplated, in light of what the defense has represented

4   regarding the allegations in Singapore and in Washington about

5   the need of an expert witness.

6       Counsel for the petitioner, it sounds like you've already

7   secured an expert witness; is that correct?

8           MR. MIN:  Your Honor, yes; I mean, we have lined up an

9   expert witness.  There's nothing for the expert witness to do

10  until we are able to see their expert witness report, be able to

11  rebut that and have our own independent evaluation of the child

12  and, possibly, the parties, and which is -- you know, in a Hague

13  case, the respondent who is bringing forward the affirmative

14  defenses, you know, it's their burden of proof, and we're -- we

15  need to see their evidence and their reports, especially their

16  reports, to be able to then prepare a rebuttal to that.

17          THE COURT:  All right.

18          MR. MIN:  But we do have experts lined up.  I

19  apologize, Your Honor.  I just wanted to make sure that was

20  clear.

21          THE COURT:  All right.

22      The challenge the court has is securing a specific date in

23  light of the court's schedule.  I have an out-of-jurisdiction

24  matter I have to handle.  That's going to be in the second week

25  of December.  And then I have another trial in this jurisdiction

1   that starts on the 17th.  The following week is a holiday, so

2   that would put us into January 7th -- or January 6th, which is a

3   Monday.  What is the availability of the parties to start a

4   trial on January 6th?

5          MR. MIN:  We are available, Your Honor, speaking on

6   behalf of petitioner.

7          THE COURT:  And respondent?

8          MS. SKINNER:  Respondent is available, Your Honor.

9          THE COURT:  Okay.

10      Now, what I'm going to do, however, is I'm going to put

11  some restrictions on what's going to happen by way of discovery

12  between now and then.

13      You've indicated, counsel, Mr. Min, the primary source of

14  material necessary to present your case-in-chief is document

15  production.  Counsel for the respondent has already indicated

16  that most of the documents are equally available to both

17  parties.

18      Is there something specific that you believe is in the

19  possession of the respondent that you can't equally access?

20          MR. MIN:  Your Honor, just to be clear, for our prima

21  facie case, no, the documents -- the discovery, we don't need

22  discovery on our prima facie case.  The document production was

23  for their affirmative defenses, you know, such as, you know,

24  recordings, photos, communications with third parties,

25  contemporaneous communications about the allegations of abuse.

1        You know, to the extent that there's contemporary

2   communications regarding the parties' intentions as their

3   official residence, I think that would probably be the only

4   thing we're not in possession of.  Right?  I mean, if the mother

5   was in communication with somebody about, Oh, we're excited to

6   go to Singapore forever, well, then that's the type of

7   production we would want, relevant communication.

8        Or if she communicated to someone, you know, We're only

9   going to be in Singapore for two months before we come back to

10  the U.S., then, obviously, those are communications we're not in

11  possession of.

12       So that's the type of documents for the prima facie case

13  that we'll probably be seeking.

14            THE COURT:  All right.

15       Ms. Skinner, are you aware of any recordings that will be

16  used either in your case or in your defense?

17            MS. SKINNER:  Your Honor, I apologize, but I don't

18  have the answer for that at this time.

19            THE COURT:  Are you aware of any photographs?

20            MS. SKINNER:  I also don't have the answer.  I'm

21  sorry.

22            THE COURT:  Are you aware of any third-party

23  communications?

24            MS. SKINNER:  And I don't know on that category as

25  well, Your Honor.

1          THE COURT:  All right.

2     What I'm going to do, then, counsel, is, I'm going to allow

3     limited document production.  I'll give the parties the

4     opportunity to meet and confer and provide this court with an

5     agreed order or explanation of why you can't agree on whatever

6     documents that are outstanding that are necessary for the trial.

7          The court is not going to permit a series of

8     interrogatories or exhaustive document production.  This case

9     appears to be fairly straightforward, in light of the

10    representations made by the parties.

11         The court will allow depositions.  I'm going to give the

12    parties the opportunity to meet and confer to exchange dates for

13    depositions -- that's both sides -- as well as the parties

14    explaining or defining what you believe the expert witnesses'

15    identification, as well as a due date for a report or any

16    writings that will be provided or generated, and then give me a

17    proposal for what you believe you can agree to.

18         If you can't agree on what I've just outlined -- and I'm

19    going to give you a due date -- then you contact this court

20    immediately, and we'll have a conference, just as we're doing

21    right now, and I'll resolve the differences.

22         But in light of what the requests are, particularly of

23    petitioner, I expect that the meet-and-confer would generate a

24    positive outcome and positive result without conflict.

25         Mr. Min, based upon what you know now, do you have any

1    reason to disagree with the court's belief of the outcome of

2    your ability to agree on these things?

3          MR. MIN:  Your Honor, I expect that we will be able to

4    agree, or at least I hope, Your Honor.  We've had some

5    difficulty on discovery issues with counsel in other matters, so

6    I'm hopeful that this matter will be different.

7       But I do think that Your Honor -- just to be clear, I think

8    they are very reasonable, and we are not going to be doing

9    anything excessive, so I'm very hopeful we can resolve these

10   issues in short order.

11         THE COURT:  Well, I'll tell you what.  I'm going to

12   give you a due date that you need to have any issues you do have

13   resolved, and provide this court a written agreed order or

14   explanation of why you can't agree or what you're disagreeing

15   on, no later than December 2nd, and that will be required to be

16   here by noon on December 2nd.

17      Any reason why you can't meet that date, counsel for the

18   petitioner?

19         MR. MIN:  No, Your Honor.  In fact, we would ask for

20   something sooner, just because if there are unresolved discovery

21   disputes on December 2nd, that gives time to go through

22   discovery before the beginning of trial.  So I would ask for an

23   earlier date.  Of course, we have no problem --

24         THE COURT:  First of all, it's just a meet-and-confer.

25   I can move that up sooner.  I was trying to be generous with the

 1  holiday coming up.  Is there any reason why the parties can't

 2  get this done by noon on the 27th or the 26th of November?

 3          MR. MIN:  No, no issue, Your Honor.  Obviously, just

 4  looking at the dates -- yeah, noon by the 27th would be

 5  perfectly fine.

 6          THE COURT:  And counsel for the respondent?

 7          MS. SKINNER:  That's fine with us, Your Honor.  Thank

 8  you.

 9          THE COURT:  All right.  So I'll expect that agreed

10  order, or reasons why you can't agree, by that date, filed by

11  noon of the 27th of November.

12      And if you can't agree, advise this court immediately so

13  that we can schedule a hearing to have this matter resolved.

14          MR. MIN:  Thank you, Your Honor.

15          THE COURT:  Is that understood?

16          MS. SKINNER:  Yes, Your Honor.

17          MR. MIN:  Yes, Your Honor.

18          THE COURT:  So for purposes of an order coming out,

19  the court is granting the petitioner's request for a

20  continuance.  The court finds that good cause has been

21  justified, based upon counsel's oral representations in court,

22  and the court has continued this matter, with all due deliberate

23  speed, to have this accomplished in context of the Hague

24  Convention expectations for expedited resolution of these types

25  of proceedings.

```
 1        Any other findings necessary or appropriate to be
 2   requested?
 3             MR. MIN:  No, Your Honor.
 4             THE COURT:  Ms. Skinner?
 5             MS. SKINNER:  Not on this issue, Your Honor.  I had
 6   two other matters that I would like to be heard on.
 7             THE COURT:  All right.  Let's talk about it.
 8             MS. SKINNER:  Thank you, Your Honor.
 9        The request for a good-cause waiver of local counsel to be
10   present at hearings and to cosign the pleadings on both sides,
11   is the request I'd like to bring before the court.
12             THE COURT:  All right.  Is there an issue with
13   opposing counsel?
14             MR. MIN:  Your Honor, we have no opposition to that,
15   Your Honor.
16             THE COURT:  Any further position or statement that
17   needs to be made, Ms. Skinner?
18             MS. SKINNER:  No, Your Honor.
19             THE COURT:  All right.  Do you wish to make any
20   further representations, beyond what you just summarized?
21             MS. SKINNER:  Just to represent that Mr. Min and I
22   regularly proceed in pro hoc vice form on these matters.  And
23   while, of course, we have local counsel available to assist, I
24   think that, as far as expediting the proceedings and to make
25   sure matters are timely filed, having local counsel be obligated
```

1  to sign those documents might make that a little bit difficult,

2  and so that's further support for the request for the waiver.

3          THE COURT:  And, counsel, will you be presenting an

4  order to that effect?

5          MS. SKINNER:  Yes, Your Honor.

6          THE COURT:  All right.  I'll direct that you provide

7  that order.

8      What's the second thing?

9          MS. SKINNER:  The second request is that, in this

10  matter, respondent has been ordered to surrender the child's

11  passport, which she has indicated, I believe, that she'd be

12  doing around 1:00 p.m. this afternoon.

13      We understand that petitioner also holds a passport for the

14  child, and we'd ask that that be relinquished to the court as

15  well.

16          THE COURT:  Okay.  And the petitioner, to your

17  knowledge, resides in the state of Washington?

18          MS. SKINNER:  Petitioner, I'm not quite sure whether

19  he's in India or Singapore.  I don't know if he's in the U.S. at

20  this moment, Your Honor.

21          THE COURT:  Then I'll ask Mr. Min.

22      Accessibility to your client's passport and do you have any

23  objection to that request?

24          MR. MIN:  Your Honor, my client is in Singapore, and I

25  think the request, to be clear, is about an alleged child's

1  passport that my client has, right?  Not his passport but --

2          MS. SKINNER:  The child's U.S. passport is in your

3  client's possession, I believe.

4          MR. MIN:  Okay.  Your Honor, I don't know whether

5  that's true or not, and I would have to check with my client.

6  To the extent he is in possession of the child's U.S. passport,

7  I don't think there's an issue in turning it over, although, I

8  mean, I would be loath to send that in the mail.  And I would

9  represent -- and I did this in a recent case, is when he travels

10  here, perhaps it gets turned over.

11      I don't know if the concern is that he somehow comes to the

12  U.S. and absconds with the child, and there's, obviously, a

13  court order that the child is not to be removed from this

14  jurisdiction, and I would represent and propose that, if and

15  when he comes to the United States, that that be the time that

16  the passport be turned over, and we would give notice of that,

17  if the passport does exist in his possession.

18          THE COURT:  I think the order, counsel, only

19  contemplates that the respondent not remove the child from the

20  Western District of Washington.  There's nothing in the order

21  that's been filed that would affirmatively state that the

22  petitioner not remove the child from the Western District of

23  Washington.

24      So as far as I'm concerned, that's a real possibility,

25  whether he would do that or not.

1        My concern is the availability of the child's passport, not

2   his passport.

3              MR. MIN:  Right, Your Honor.  We're happy to stipulate

4   that the child is not to be removed from the Western District of

5   Washington by anybody, either party, or the party -- any party

6   cooperating or attempting to have the child removed by even a

7   third party.  So that part is --

8              THE COURT:  I'll require that stipulation be filed

9   with this court by way of a separate agreed order.

10             MR. MIN:  Okay.

11             THE COURT:  And I'm also going to require that your

12  client provide his child's U.S. passport on an expedited basis.

13  If he's not coming to the United States, then I'll allow that

14  passport to be provided upon his arrival in the United States.

15  If he believes that he does not have the child's passport, the

16  only thing I've heard is the respondent in the case, through

17  counsel, that she thinks he might have the child's passport.  If

18  he doesn't have the child's passport, then I'll require that he

19  file a declaration under penalty of perjury, that he does not

20  have the child's passport and that he has exhausted all methods

21  of search for the child's passport, and it's unavailable.

22        Is that agreed?

23             MR. MIN:  Agreed, Your Honor.

24             MS. SKINNER:  Thank you, Your Honor.

25             THE COURT:  Anything further, Ms. Skinner?  I believe

1    the court has addressed the two items that you've raised.

2              MS. SKINNER:  That's correct, Your Honor, nothing

3    further.  Thank you.

4              THE COURT:  Anything further from the petitioner?

5              MR. MIN:  No, Your Honor.  Thank you for your time.

6              THE COURT:  We'll be in recess.

7

8                   (Proceedings concluded at 12:19 p.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3

4              I, Nancy L. Bauer, CCR, RPR, Court Reporter for

5    the United States District Court in the Western District of

6    Washington at Seattle, do hereby certify that I was present in

7    court during the foregoing matter and reported said proceedings

8    stenographically.

9              I further certify that thereafter, I have caused

10   said stenographic notes to be transcribed under my direction and

11   that the foregoing pages are a true and accurate transcription

12   to the best of my ability.

13

14

15              Dated this 27th day of November 2024.

16

17                              /S/  Nancy L. Bauer

18                              Nancy L. Bauer, CCR, RPR
                                Official Court Reporter
19

20

21

22

23

24

25