® SCC Online Web Edition, © 2025 EBC Publishing Pvt. Ltd.
Page 1      Tuesday, January 07, 2025
Printed For: Office of Ms. Geeta Luthra .
SCC Online Web Edition: https://www.scconline.com
© 2025 EBC Publishing Pvt. Ltd., Lucknow.
-----------------------------------------------------------------------------------------------------------------------------------------------------

**2002 SCC OnLine Bom 267 : (2002) 5 Bom CR 158 : (2003) 105 (1) Bom LR 189 : (2003) 114 Comp Cas 141 : (2003) 1 BC 605 : 2002 CLC 1116 : (2003) 2 Civ LT 239**

### Bombay High Court
### (O.O.C.J.)
(Before D.K. Deshmukh, J.)

Larsen & Toubro Limited … Applicant;

*Versus*

Prime Displays Pvt. Ltd. & others … Respondents.

Company Application Nos. 41, 42 & 43 of 2002 in Company Petition Nos. 1121, 1122 & 1123 of 2001

Decided on March 15, 2002

The Judgment of the Court was delivered by

**D.K. Deshmukh, J.:**— The parties are agreed that the facts and law involved in these three company applications are identical and hence all these applications can be conveniently disposed of by a common order.

**2.** The facts that are material and relevant for the purpose of deciding these applications are as under:— Prime Displays Pvt. Ltd., Everest Media Ltd., and Abiz Business Pvt. Ltd., have filed company petitions against Larsen & Toubro Ltd. for winding up of the Larsen & Toubro Ltd., which is a company incorporated under the Companies Act, on the ground that it is unable to pay its debts. Larsen & Toubro Ltd. has taken out these company applications.

**3.** In this order the Larsen & Toubro Ltd. is referred to as the applicant and the companies which have filed these company petitions are referred to as the respondents.

**4.** The applicant has entered into contracts with the respondents, which are called "Hoarding Contracts". Pursuant to the terms of these

---

 Page: 160

contracts, the respondents in the month of June, 2001 raised bills on the applicant. The amounts under the bills were payable by the applicant on or before 31-7-2001. The applicant did not make the payment. Demand notices dated 31-8-2001 were served on the applicant by the respondents under section 434 of the Companies Act. The applicant repudiated the hoarding contracts by letters issued in September, 2001. The applicant took the stand that it is not liable to pay the amount, as the contract because of which the amounts were payable themselves have been repudiated. As the statutory notice was not complied with, the respondents filed company petitions in this Court in the month of November, 2001. Along with the petitions, the respondents had filed copies of some documents. The applicant in its affidavit in reply objected to the production of these copies on the ground that, the documents are privileged as also on the ground that the respondents had not disclosed how they have secured these copies of the documents. It was also claimed that the documents of which the copies were filed are confidential. The respondents on 15-1-2001 submitted a compilation of documents. On 22-1-2001, the applicant took out these company applications seeking an order from the Court for expunging from the record the


© SCC Online Web Edition, © 2025 EBC Publishing Pvt. Ltd.
Page 2        Tuesday, January 07, 2025
Printed For: Office of Ms. Geeta Luthra .
SCC Online Web Edition: https://www.scconline.com
© 2025 EBC Publishing Pvt. Ltd., Lucknow.

documents listed in the schedule of these applications. It appears that the company petitions came up for admission before the Court on 21-1-2002. The applicant requested the Court that these applications should be heard first and decided and it is only thereafter that the company petitions should be taken up for consideration. This request was not granted by the Court by order dated 23rd January, 2002 and the Court directed that these applications would be heard along with the company petitions. This order was challenged by the applicant before the appeal Court. The appeals have been decided by the Appeal Court by order dated 14-2-2002. It is paragraph 1-B of the order dated 14-2-2002 of the Appeal Court, which is relevant for the present purpose. It is reads as under:—

> "The Company Court will thereafter first decide the Judge's summons including the question of production and/or admissibility of documents objected to therein. If the company Court by its order on the Judge's summons holds any of the objected documents as capable of being produced and/or as being admissible, the company will be at liberty to file its further surrejoinder to these documents within one week from the date on which the ordinary copy of the said order is made available."

**5.** Thus, in terms of the order of the Appeal Court, I have heard these applications, which seek an order for expunging 21 documents. (5 documents annexed to the petitions and 16 documents submitted in the compilation of documents by the respondents). It may be pointed out that in the schedule to the applications, 23 documents have been listed, but the learned Counsel for the applicant at the out set stated that they do not seek any such order in relation to the documents at Serial Nos. 22 and 23 in the schedule of the applications.

**6.** The learned Senior Counsel for the applicant, Shri Andhyarujina, submits that these 21 documents, copies of which have been produced by the respondents have been prepared by the applicant in anticipation of litigation and are in the nature of legal advice sought, both from the applicant's legal department as well as from the Counsel for the purpose

 Page: 161

of seeking further legal advice. Hence, these documents are privileged. It is submitted that legal privilege claimed in this regard is of two types; (i) communication between legal Adviser and the applicant, whether the litigation is contemplated or not and (ii) communication in relation to anticipated litigation, if intended to be used in litigation whether actually used or not?

**7.** So far as the first aspect is concerned, he submits that it is clear from the documents that the legal advice was sought from the Counsel in the year 1999 itself. Subsequently also legal opinion from the Counsel was secured and that legal opinion has been extensively referred to and dealt with in these documents. He further submits that the legal Advisers of the applicant, who are working in the legal department of the company have also given their advice and opinion, which is to be found in these documents.

**8.** So far as the second aspect is concerned, the learned Counsel relies on the judgment of the Appeal Court in England in the case of (*The Southwark and Vauxhall Water Company* v. *Quick*)[1], 1878 (3) Q.B.D. 315. He also relies on a judgment in the case of (*Kennedy* v. *Lyell*)[2], 23 Ch.D. 387 and the judgment in the case (*Mayor and Corporation of Bristol* v. *Cox*)[3], 26 Ch.D. 678. He also relies on a judgment of this Court in the case of (*Municipal Corporation of Greater Bombay* v. *Vijay Metal Works*)[4],


SCC Online Web Edition, © 2025 EBC Publishing Pvt. Ltd.
Page 3                Tuesday, January 07, 2025
Printed For: Office of Ms. Geeta Luthra .
SCC Online Web Edition: https://www.scconline.com
© 2025 EBC Publishing Pvt. Ltd., Lucknow.
-----------------------------------------------------------------------------------------------------------------------------------------------------

A.I.R. 1982 Bombay 6.

**9.** Shri Vinod Bobde, the learned Senior Counsel appearing for the applicant submits that the privilege in relation to communication between the applicant/company and its legal department is claimed under section 129 of the Evidence Act. He submits that the language and scope of the underlying rationale and the object of section 129, are very different from and wider than those relating to section 126. Instead of using the words "barrister, attorney, pleader or *vakil*" which are used repeatedly in section 126, the legislature has consciously departed therefrom and used the comprehensive term "his legal professional Adviser". The rationale underlying section 129 is that a person should be entirely free to consult his legal Advisers and claim absolute privilege with respect to confidential communications with him. He submits that the words "barrister, attorney, pleader or *vakil*" occur in sections 127, 128 and 150 and the illustrations of section 149. Thus, whenever the legislature wanted to refer to the four specific categories of persons who appear in Court, it consciously used these words and when it wanted to deal with persons who only advise (whether or not they also appear in Court) the legislature has used different terminology as in section 129 of the Evidence Act. He submits that the word "professional" in section 129 is used merely to denote a professionally qualified legal Advisor *i.e.* a person who is qualified to give legal advise. He submits that an Advocate or Senior Advocate in India, who is practising in the courts gives legal advice, he is covered. Equally a person whose chosen activity in the profession is to give legal advice to a client whom he serves full time, is also covered. He submits that the reliance placed on the provisions of the Advocates Act for the purpose of interpreting the meaning of the words used in sections 126 and 129 of the Evidence Act by the respondents is uncalled for.

**10.** The learned Senior Counsel appearing for the respondents, Shri Jethmalani, did not dispute the proposition that a communication between

 Page: 162

a client and his legal Adviser in relation to anticipated litigations would be entitled to a privilege, but relying on the judgment of the House of Lord in the case of (*Waugh* v. *British Railways Board*)[5], 1979 (2) All. E.R. 1169, he submits that the privilege can be claimed, if the only or the dominant purpose of the document coming into existence was to refer to the legal Advisor for advise and use in litigation. He further submits that even after the document is privileged, in case the document is relevant, secondary evidence of that document is admissible. He relies on the provisions of section 5 of the Evidence Act and the judgment of the Supreme Court in the case of (*H.H. Advani* v. *State of Maharashtra*)[6], (1969) 2 SCC 662 : A.I.R. 1971 S.C. 44, to submit that the Evidence Act is the complete Code and relevance and admissibility of the evidence must be decided on the basis of the provisions of the Evidence Act. In support of the submission that secondary evidence of privileged document is admissible, he relies on a judgment in the case of (*Calcraft* v. *Guest*)[7], 1898 (1) Q.B. 759, (*Goddard* v. *Nationwide Building Society*)[8], 1987 (1) Q.B. 670, (*ITC Film Distributors Ltd.* v. *Video Exchange*)[9], 1982 (1) Ch. 431. He submits that the cases falling under section 123 of the Evidence Act do not apply to the cases governed by section 126 and section 129 of the Evidence Act. He further submits that all the 21 documents fall within the proviso to section 126 of the Act as they are in furtherance of an illegal purpose *i.e.* fabrication of evidence to defeat a lawful claim of the respondents.


SCC Online Web Edition, © 2025 EBC Publishing Pvt. Ltd.
Page 4                    Tuesday, January 07, 2025
Printed For: Office of Ms. Geeta Luthra .
SCC Online Web Edition: https://www.scconline.com
© 2025 EBC Publishing Pvt. Ltd., Lucknow.
-----------------------------------------------------------------------------------------------------------------------------------------------------

**11.** Shri Vahanwati, the learned Advocate General, appearing for the respondents, in relation to the claim of privilege by the applicant under section 129 of the Evidence Act and in relation to the advice from the legal department of the applicant submits that in order to claim privilege under sections 126 and 129 of the Evidence Act, it is incumbent upon the person claiming the privilege to show that the privilege is claimed in respect of a professional communication. Further according to him, the applicant has failed to do so. He submits that in order to claim privilege in relation to the opinion of the internal legal Advisor, it was necessary for the applicant to plead and establish before the Court what is relationship between the applicant and its internal legal Advisers. He submits that it was for the applicant to establish that these internal legal Advisers have professional qualification to give legal advice. He submits that the judgment of this Court in the case of *Municipal Corporation of Greater Bombay* relied on by the applicant cannot be said to be good law, because firstly, in that case the question whether the opinion of the legal Adviser who is employed by company is entitled to privilege under section 129 did not arise. He further submits that the Court has also not considered the provisions of the Advocates Act and the Rules framed thereunder, which according to the learned Counsel, were relevant for considering the question. He further submits that the law on this point is now established by the judgment of the Supreme Court in the case of (*Satish Kumar Sharma* v. *Bar Council of H.P.*)[10], (2001) 2 SCC 365. He submits that in view of the judgment of the Supreme Court in the case of *Satish Kumar Sharma*, the judgment of this Court in the case of *Municipal Corporation of Greater Bombay* has lost its binding force. He submits, by referring to various sections of the Advocates Act, especially section 29, that no person can claim to be entitled to practice the profession of law unless he complies with the provisions of the Advocates Act. He submits that

Page: 163

giving professional legal advice is practising of profession of law, which only an Advocate who is on the roll of the Bar Council can undertake.

**12.** The learned Counsel appearing for the applicant submitted that the provisions of sections 126 and 129 of the Evidence Act being substantive rules of policy of the legislature operate as a bar to the reception of evidence even though it is relevant. He submits that in relation to the documents which are privileged, the question of relevance and admissibility arise if, and only if, the initial bar or hurdle of production is surmounted. He further submits that sections 126 and 129 relating to legal privilege are not mere rules of evidence but embody a very high rule of public policy, namely, as a fundamental condition on which the administration of justice as a whole rests. He relies on a judgment in the case of (*R.* v. *Derby*)[11], 1995 (4) All. E.R. 526, and the judgment in the case of (*Bullivant* v. *Attorney General of Victoria*)[12], 1901 A.C. 196. Referring to the judgment of the Supreme Court in the case of *H.H. Advani* referred to above, he submits that the Evidence Act is complete Code and therefore, it must be read as self contained Code in respect of rules of evidence including the prohibition against production of certain documents. He further submits that the non-exclusion rule in the case of *Calcraft* referred to above cannot apply in view of the statutory bar to the production of evidence under sections 126 and 129 of the Evidence Act. He submits that in any case, the *Calcraft* case is wrongly decided. He submits that it is now limited in its application in England. He relies on a judgment in the case of (*Butler* v. *Board of Trade*)[13], 1970 (3) All. E.R. 593. He submits that by the judgment in the case of (*R.* v. *Uljee Court of Appeal of New Zealand*)[14], 1982 (1) N.Z.L.R. 561,


® SCC Online Web Edition, © 2025 EBC Publishing Pvt. Ltd.
Page 5    Tuesday, January 07, 2025
Printed For: Office of Ms. Geeta Luthra .
SCC Online Web Edition: https://www.scconline.com
© 2025 EBC Publishing Pvt. Ltd., Lucknow.
-----------------------------------------------------------------------------------------------------------------------------------------------------

the *Calcraft* case has been discussed in detail and it has been shown that it has been wrongly decided. It is further submitted that even if it is assumed that the rule laid down in *Calcraft* case is correct and that secondary evidence of a privilege document can be tendered, a person who is entitled to the benefit of the proceeding of that document is entitled to institute proceeding to restrain the use of the privileged material before it is actually used. He submits that by taking out these company application, before the company petitions in which these documents have been produced was taken up for consideration by this Court, the applicant has taken steps to prevent the use of these privileged documents by the respondents. He relies on a judgment in the case of (*Lord Ashburton* v. *Pape*)[15], 1913 (2) Chancery Division 469 and the judgment in the case of *Goddard* and in the case of *ITC Film Distributors* referred to above. He submits that in the present case the Appeal Court by its order dated 14-2-2002 has directed that the Court shall first decide these application. He submits that the applicant has objected, at the very first moment, to the use of the privileged documents by the respondents.

**13.** The learned Counsel for the applicant further submits that there is no question of the communication being made in furtherance of any illegal purpose as argued by Shri Jethmalani. He submits that in the reply filed to the company applications, it is not pleaded that these documents have come into existence for any illegal purpose. It is also not pleaded as what is the illegal purpose. It is submitted that specific pleading in relation to such allegation of illegality, fraud, inequity *etc.* are absolutely necessary. He relies on the provisions of Order 6, Rule 4 of Civil

--------------------------------------------------------

 Page: 164

Procedure Code. He submits that it is clear from the submissions made in these company applications that the respondents desire to rely on these documents, because these documents disclose the correct facts and law. The learned Counsel further submits that production of such communication is prohibited in India under the provisions of Order 11, Rule 14 of the Civil Procedure Code. He relies on a judgment of this Court in the case of (*Vishnu Wagh* v. *N.Y. Life Insurance*)[16], 7 Bom. L.R. 709. He further submits that independently of the issues of privilege, the applicant seeks expunction of these 21 documents on the ground of equity. It is submitted that to permit these documents to remain on record by the Court, would constitute an abuse of the process of the Court. It is submitted that it is more so because these documents are sought to be used in support of the winding up petition, which is an equitable jurisdiction of the Court, It is submitted that in this context the entire conduct of the respondents including the surreptitious and dishonest manner in which the documents were obtained, the improper manner in which they were sought to be introduced on the record of the Court and the manner in which their possession by the respondents was sought to be explained in the affidavit dated 5-3-2002 disentitles the respondents to use these documents in support of their case. It is submitted that as the respondents have obtained these documents by unlawful method, this Court in exercise of its discretion should restrain the respondents from using these documents.

**14.** Shri V.R. Manohar, learned Senior Counsel appearing for the respondents relying on the judgment of the Supreme Court in the case of (*Pushpadevi M. Jatia* v. *M.L. Wadhavan*)[11], 1988 (1) Bom. C.R. 480 (S.C.) : (1987) 3 SCC 367 : A.I.R. 1987 S.C. 1748, submits that for consideration of admissibility of the relevant document the method by which the document is obtained is not relevant. He also submits that

SCC Online Web Edition, © 2025 EBC Publishing Pvt. Ltd.
Page 6          Tuesday, January 07, 2025
Printed For: Office of Ms. Geeta Luthra .
SCC Online Web Edition: https://www.scconline.com
© 2025 EBC Publishing Pvt. Ltd., Lucknow.
-----------------------------------------------------------------------------------------------------------------------------------------------------------

section 129 of the Evidence Act covers only those legal Advisers who give legal advice as a profession as distinguished from the legal Advisers who are employed or are in service of the person to whom the legal advice is given. He submits that the judgment of the Court in the case of *Bombay Municipal Corporation of Greater Bombay* referred to above stands completely overruled by the judgment of the Supreme Court in the case of *Satish Kumar Sharma* referred to above.

**15.** Now, first taking up submission of the applicant that these documents have come into existence in anticipation of litigation for the purpose of seeking legal advice, therefore, they are privileged, it is to be seen that the settled law in this regard is to be found in the judgment of the Court of appeal in England. In its judgment in the case of *Southwark & Vauxhall Water Company* referred to above. Lord Cockbum, C.J., has observed thus:—

"The relation between the client and his professional legal adviser is a confidential relation of such a nature that to my mind the maintenance of the privilege with regard to it is essential to the interests of justice and the well-being of society. Though it might occasionally happen that the removal of the privilege would assist in the elucidation of matters in dispute, I do not think that this occasional benefit justified us in incurring the attendant risk. The question here is whether the documents of which inspection is sought are within the privilege. I think they are. It is clear that they were documents containing information which had been obtained by the plaintiffs



Page: 165

with a view to consulting their professional adviser. Two out of the three sorts of documents were actually submitted to him; as to the other it is not clear whether it was actually, submitted to him or not. It is admitted upon the decisions that where information has been obtained on the advice of the party's solicitor is privileged. I can see no distinction between information obtained upon the suggestion of a Solicitor, with the view of its being submitted to him for the purpose of his advising upon it, and that procured spontaneously by the client for the same purpose. Again, I see no distinction between the information so voluntarily procured for that purpose and actually submitted to the Solicitor, and that so procured but not yet submitted to him. If the Court or the Judge at chambers is satisfied that it was *bona fide* procured for the purpose, it appears to me that it ought to be privileged."

**16.** Cotton, L.J., in his separate judgment in the same case has observed thus:

"That, I think, is the true principle, that if a document comes into existence for the purpose of being communicated to the Solicitor with the object of obtaining his advice, or of enabling him either to prosecute or defend an action, then it is privileged, because is something done for the purpose of serving as a communication between the client and the Solicitor………….

The fact that it was not laid before him can in my opinion make no difference; the <u>object of the rule and the principle of the rule is that a person should not be in any way fettered in communicating with him Solicitor and that must necessarily involve that he is not to be fettered in preparing documents to be communicated to his Solicitor.</u>"

(Emphasis supplied)

**17.** It is clear from the above quoted observations that in order to extend the privilege to a document, it has to be shown that the document came into existence in anticipation of litigation for being used in litigation. In this regard averments in


SCC Online Web Edition, © 2025 EBC Publishing Pvt. Ltd.
Page 7          Tuesday, January 07, 2025
Printed For: Office of Ms. Geeta Luthra .
SCC Online Web Edition: https://www.scconline.com
© 2025 EBC Publishing Pvt. Ltd., Lucknow.
-----------------------------------------------------------------------------------------------------------------------------------------------------------

paragraphs 3, 4 & 5 of the affidavit filed in support of the applications are relevant.

**18.** They read as under:—

3. I say and submit that the said documents are clearly privileged communications, *inter alia*, being in the nature of both internal legal advice and also opinions of Counsel as well as in anticipation of litigation. I say that under the provisions of the Indian Evidence Act and in law the said documents would be attached with privilege and hence not capable of being referred to, relied upon or produced in this or any other proceedings.

4. Sometime in early June, 1999 the CEO and some of the other Executive Directors of the applicant requested various officers and executives including in the Advertising & Public Relations Department (A & PRD) to undertake a study of the background/genesis of the domestic hoarding contracts. These officers and executives were also asked to consider various related aspects of the matter, including a possibility of the applicant having to terminate the long term hoarding contracts entered into with the respondent, resulting in possible litigation. This study and review was initiated because, as already set out in paragraph 15 of the affidavit in reply, sometime in May/June 1999, the attention of the applicant was drawn to the exorbitant rates of advertising and the abnormally long periods for which the contracts were entered into/renewed with the respondent herein.


Page: 166

5. In the aforesaid circumstances, I say and submit that the internal notes and documents referred to in the schedule to the present company application are either documents prepared in anticipation of litigation consequent upon possible termination of the respondents contracts and/or in the nature of the legal advice sought/obtained both internally from the applicant's legal department or from Counsel/Attorneys. It is well settled that such legal advice/opinions cannot be referred to and/or relied upon in any manner whatsoever. This Hon'ble Court be pleased to therefore not permit the respondent to abuse the process of the Court by doing indirectly what they would not be permitted to do directly.

**19.** In the affidavit filed in reply by the respondents, the only statement relevant in this regard is to be found in paragraph 3 thereof, which reads as under:

"Further a majority of the documents, on the face thereof, are not communications between legal Counsel and clients nor constitute legal advice nor in anticipation of litigation as alleged or otherwise."

**20.** The applicant has filed a further affidavit dated 11-2-2002 after reply was submitted by the respondents. Following statements from paragraph 4 thereof is relevant:

"I say that all the 23 documents enumerated in the schedule to the Judge's Summons are entitled to the claim for legal privilege, being the internal communications of the respondent, which are either in anticipation of litigation, or are internal communications between the respondent's legal department and other departments, or are documents which refer to and/or rely upon and/or extensively quote from the opinion of Senior Counsel of this Hon'ble Court and/or are documents brought into being with the dominant purpose of obtaining legal advice and/or which reflect the legal advice given. The said documents were made with a view to the defence and/or prosecution of such litigation."

**21.** The respondents, on the other hand, have not produced any material on record

SCC Online Web Edition, © 2025 EBC Publishing Pvt. Ltd.
Page 8          Tuesday, January 07, 2025
Printed For: Office of Ms. Geeta Luthra .
SCC Online Web Edition: https://www.scconline.com
© 2025 EBC Publishing Pvt. Ltd., Lucknow.
-----------------------------------------------------------------------------------------------------------------------------------------------------

to show that the statement made on behalf of the applicant is not correct. During the hearing of the applications, on behalf of the respondents it was not disputed that (i) in case the document comes into existence in anticipation of litigation for the purpose of seeking legal advice, the document is privileged; (ii) that the documents which are subject-matter of these applications have come into existence in anticipation of litigations and (iii) that the documents have come into existence for being used in the litigation for defence or for prosecution of the litigation. The only area of dispute between the parties in this regard is that the dominant purpose of these documents cannot be said to be seeking legal advice or use in litigation. The respondents rely on a judgment in the case of *Waugh* v. *British Railway Board* referred to above. In his judgment in the above referred case, Lord Edmund-Davies, after referring to the authorities observed thus:—

> "After considerable deliberation, I have finally come down in favour of the test propounded by Barwick, C.J., in *Grant* v. *Downs* in the following words:
>
> Having considered the decisions, the writings and the various aspects of the public interest which claim attention, I have come to the conclusion that the Court should state the relevant principle as follows: a document which was produced or brought into existence either with the dominant purpose of its author, or of the person or authority under whose direction, whether particular



Page: 167

or general, it was produced or brought into-existence, of using it or its contents in order to obtain legal advice or to conduct or aid in the conduct of litigation, at the time or its production in reasonable prospect, should be privileged and excluded from inspection."

> Dominant purpose, then, in my judgment, should now be declared by this house to be the touchstone. It is less stringent a test than 'sole' purpose, for, as Barwick, C.J., added—
>
> '………the fact that the person ………. had in mind other uses of the document will not preclude that document being accorded privilege, if it were produced with the requisite dominant purpose.'

**22.** It is to be noted here that in the affidavit filed on behalf of the respondents, it is nowhere claimed that the dominant purpose of all or any of the 21 documents was not to use these documents for the purpose of defence or for prosecuting the anticipated litigation. In the affidavit in reply, there is total denial of the statement made on behalf of the applicant that all the documents have come into existence in anticipation of litigation for the purpose of seeking legal advice. There is nothing in the pleadings of the respondents to show as to the dominant purpose of which of these documents cannot be said to be seeking legal advice or use for the purpose of defence or prosecuting the anticipated litigations. Even in the written submissions on behalf of the respondents, no submissions have been made as to which of these documents cannot be said to have seeking of legal advice or use in the litigation as dominant purpose. In order to contend that some of these documents did not have seeking of legal advice or use in the anticipated litigation as a dominant purpose, the respondents were required to refer to such documents and then submit the reason why according to them, these documents cannot be said to have seeking of legal advice or use in the anticipated litigation as a dominant purpose. Had such course been followed, then and only then the applicant would get an opportunity of repeal the contentions of the respondents. In fact, out of the learned Counsels appearing for the

SCC Online Web Edition, © 2025 EBC Publishing Pvt. Ltd.
Page 9          Tuesday, January 07, 2025
Printed For: Office of Ms. Geeta Luthra .
SCC Online Web Edition: https://www.scconline.com
© 2025 EBC Publishing Pvt. Ltd., Lucknow.
-----------------------------------------------------------------------------------------------------------------------------------------------------

respondents, only Shri Jethmalani took me through some of the documents to contend that the respondents, desire to use these documents to show that the defence now raised in the company petition that the hoarding contracts were vitiated by fraud is an after thought. At the hearing of the petition, no attempt was made to show by reading the documents that the dominant purpose of these documents was not the use of these documents either for the purpose of defence or for the purpose of prosecuting anticipated litigations. In other words, therefore, the statement made on oath by the applicant that these documents came into existence in anticipation of the litigations for the purpose of seeking legal advice and for use for the purpose of defence or prosecution of the anticipated litigation remains uncontroverted and therefore, in these circumstances, I am left with no alternative but to accept the statement of the applicant that all these 21 documents have come into existence in anticipation of litigation for the purpose of seeking legal advice and for use in the anticipated litigation for the purpose of defence or for the purpose of prosecuting that litigation. Perusal of the documents also shows that the legal opinion secured from the Counsel have been referred to in detail, the consequence of the termination of the contract as well as the consequence of non-payment of charges under the contracts have been discussed in detail, the probability of litigation between the parties as a result of the above


Page: 168

referred steps has been extensively referred to and discussed in all these documents. Thus, it cannot be said that the dominant purpose of these documents is not use of these documents for the purpose of defence or for the purpose of prosecuting the anticipated litigation.

**23.** The privilege that attaches to a document coming into existence in anticipation of litigation is the legal professional privilege. The principle behind this privilege is summarized in the judgment of the House of Lord in the case of *Waugh* referred to above, which is relied on behalf of the respondents themselves. In his judgment Lord Simon of Glaisdale observes thus:

> "This system of adversary forensic procedure with legal professional advice and representation demands that communications between lawyer and the client should be confidential, since the lawyer is for the purpose of litigation merely the client's alter ego. So too material which is to go into the lawyer's (*i.e.* the client's) brief or file for litigation. This is the basis for the privilege against disclosure of material collected by or on behalf of a client for the use of his lawyer in pending or anticipated litigation."

**24.** So far as the legal professional privilege is concerned, it is incorporated in provisions of sections 126, 127 and 129 of the Evidence Act. They read as under:—

> **126. Professional communications**— No barrister, attorney, pleader or *vakil* shall at any time be permitted, unless with his client's express consent, to disclose any communication made to him in the course and for the purpose of his employment as such barrister, pleader, attorney or *vakil*, by or in behalf of his client, or to state the contents or condition of any document with which he has become acquainted in the course and for the purpose of his professional employment, or to disclose any advice given by him to his client in the course and for the purpose of such employment:
> 
> Provided that nothing in this section shall protect from disclosure—
> 
> (1) Any such communication made in furtherance of any (illegal) purpose.


SCC Online Web Edition, © 2025 EBC Publishing Pvt. Ltd.
Page 10          Tuesday, January 07, 2025
Printed For: Office of Ms. Geeta Luthra .
SCC Online Web Edition: https://www.scconline.com
© 2025 EBC Publishing Pvt. Ltd., Lucknow.
-----------------------------------------------------------------------------------------------------------------------------------------------------

   (2) Any fact observed by any barrister, pleader, attorney or vakil, in the course of his employment as such, showing that any crime or fraud has been committed since the commencement of his employment.

It is immaterial whether the attention of such barrister (pleader) attorney or *vakil* was or was not directed to such fact by or on behalf of his client.

**127. Section 126 to apply to interpreters *etc.*—** The provisions of section 126 shall apply to interpreters and the clerks or servants or barristers, pleaders, attorneys and *vakils*.

**129. Confidential communications with legal advisers—** No one shall be compelled to disclose to the Court any confidential communication which has taken place between him and his legal professional adviser, unless he offers himself as a witness, in which case he may be compelled to disclose any such communications as may appear to the Court necessary to be known in order to explain any evidence which he has given, but no others.

**25.** Perusal of the provisions of section 126 of the Evidence Act shows that it injuncts a lawyer from disclosing without his client's express consent any communication made to him in the course and for the purpose of his employment as such lawyer. Obviously, the injunction contained in section 126 of the Evidence Act against a lawyer is for the benefit of a client. Thus, a client is entitled to prohibit his lawyer from disclosing any communication made to such lawyer in the course and for the purpose of his

---

Page: 169

employment as a lawyer. Section 129 has been enacted to protect the client from being forced to disclose this communication. The Supreme Court in its judgment in the case of (*State of Punjab* v. *Sodhi Sukhdev Singh*)[18], A.I.R. 1961 S.C. 493, has observed thus:—

> "It has been acknowledged generally, with some exceptions, that the Indian Evidence Act was intended to and did in fact consolidate the English Law of Evidence. It has also often been stated with justification that Sir James Stephen has attempted to crystalize the principles contained in Taylor's work into substantive propositions. In case of doubt or ambiguity over the interpretation of any of the sections of the Evidence Act we can with profit look to the relevant English common law for ascertaining their true meaning."

**26.** It is clear from the judgment of the Court of appeal in the case of *Southwark & Vauxhall Water Company* referred to above that it is a judgment delivered in the month of February, 1878 and the law that privilege attaches to a document prepared in anticipation of litigation was the law in England in the 19th Century, to be precise much before 1872 when the Indian Evidence Act was enacted. It is further clear from the following observations from the judgment of Lord Lloyd of Berwick in the case of *R.* v. *Derby Magistrate's Court* 1995 (4) All. E.R. 526:—

> "The law has been established for at least 150 years, since the time of Lord Brougham LC in (*Greenough* v. *Gaskell*)[19], 1833 (1) My & K 98 : 1824-34 All. E.R. Rep 767 : subject to recognised exceptions, communications seeking professional legal advice, whether or not in connection with pending Court proceedings, are absolutely and permanently privileged from disclosure even though, in consequence, the communications will not be available in Court proceedings in which they might be important evidence."

**27.** Sections 126 and 129 of the Evidence Act protect the communications between

SCC Online Web Edition, © 2025 EBC Publishing Pvt. Ltd.
Page 11       Tuesday, January 07, 2025
Printed For: Office of Ms. Geeta Luthra .
SCC Online Web Edition: https://www.scconline.com
© 2025 EBC Publishing Pvt. Ltd., Lucknow.

-----

a lawyer and client made during the employment of the lawyer. In my opinion, these provisions by necessary implication protect the documents prepared by the client in anticipation of litigation either for seeking legal advice or for using them in that litigation.

**28.** In my opinion, therefore, it can be safely said that in terms of the provisions of section 126 and section 129 of the Evidence Act, the legal professional privilege incorporated in those provisions attaches to a document coming into existence in anticipation of litigation. From the above discussion, it is clear that on the basis of the material that is produced by the parties on record, it can be safely said that all the 21 documents to which these company applications relate came into existence in anticipation of litigation for being used in the litigation for the purpose of litigation or for the purpose of defence that litigation and therefore, they are privileged documents within the meaning of sections 126 and 129 of the Evidence Act.

**29.** This takes me to the submission of Shri Jethmalani, the learned Counsel appearing for the respondents, that because these documents were made in furtherance of an illegal purpose, in terms of the provisions of the proviso to section 126 of the Evidence Act, the documents are not entitled to privilege. It is pertinent to note here that in the affidavit filed on behalf of the respondents in this company applications, there is no averments to be found that these documents have come into existence in furtherance of any illegal purpose. Rule 4 of Order 6 of the Civil Procedure

 Page: 170

Code lays down that in all cases in which a party relies on any misrepresentation, fraud, breach of trust, wilful default of undue influence, particulars of such misrepresentation, fraud, breach of trust, willful default *etc.* shall be stated in the pleadings. It is clear that whenever a party wants to contend that any document is prepared in furtherance of any illegal purpose or preparation of a document is a fraud, then not only such a case is required to be pleaded, but details of such illegal purpose or fraud will have to be stated in the pleadings. Perusal of the provisions of Rule 6 of the Company Court Rules shows that the provisions of the Civil Procedure Code are applicable to the petition filed under the Companies Act, if there is no contrary indication in the Company Act or the Rules framed thereunder. In the absence of pleadings, such an allegation cannot be made at the time of oral argument and the Court cannot consider such argument. In this view of the matter, therefore, in my opinion, the submission that these documents were prepared in furtherance of any illegal purpose has no substance and has to be rejected.

**30.** Shri Jethmalani, the learned Counsel appearing for the respondents refers to the provisions of section 5 of the Evidence Act, which reads as under:

"**5. Evidence may be given of facts, in issue and relevant facts**.—

Evidence may be given in any suit or proceeding of the existence or non-existence of every fact in issue and of such other facts as are hereinafter declared to be relevant, and of no others."

**31.** Thus, it is clear from the provisions of section 5 of the Evidence Act quoted above that evidence can be given of the existence or non-existence of relevant facts. It is nobody's case that these documents are not relevant. The debate is on production of these documents. In my opinion, the documents, which are covered by or which are privileged in view of the provisions of sections 126 and 129 of the Evidences Act, though relevant, cannot be produced. In a sense, the provisions of sections 126 and 129 operate as an exception to the provisions of section 5 of the Evidence Act. In

SCC Online Web Edition, © 2025 EBC Publishing Pvt. Ltd.
Page 12          Tuesday, January 07, 2025
Printed For: Office of Ms. Geeta Luthra .
SCC Online Web Edition: https://www.scconline.com
© 2025 EBC Publishing Pvt. Ltd., Lucknow.
-----------------------------------------------------------------------------------------------------------------------------------------------------

other words, evidence of a relevant document under section 5 of the Evidence Act cannot be given if that document is privileged because of the provisions of sections 126 and 129 of the Evidence Act. The Supreme Court in its judgment in the case of (*Pooran Mal* v. *Director of Inspection (Investigation) New Delhi*)[20], (1974) 1 SCC 345, after taking resume of the law on the point in force in India and England has observed thus in paragraph 24 of its judgment:—

> "It would thus be seen that in India, as in England, where the test of admissibility of evidence in relevancy, unless there is an express or necessarily implied prohibition in the Constitution or other law evidence obtained as a result of illegal search or seizure is not liable to be shut out."

**32.** It is thus clear that introduction of relevant material can be shut out if by a law in force introduction of such material is prohibited. The Supreme Court has considered this aspect of the matter in relation to the provisions of section 123 of the Evidence Act, which accords privilege to information derived from unpublished official records relating to any affairs of the State, in its judgment in the case of (*State of U.P.* v. *Raj Narain*)[21] A.I.R. 1974 S.C. 865, and has observed thus:—

**33.** Evidence is admissible and should be received by the Court to which it is tendered unless there is a legal reason for its rejection. Admissibility


Page: 171

presupposes relevancy. Admissibility also denotes the absence of any applicable rule of exclusion. Facts should not be received in evidence unless they are both relevant and admissible. The principal rules of exclusion under which evidence becomes inadmissible are two-fold. First, evidence of relevant facts is inadmissible when its reception offends against public policy or a particular rule of law. Some matters are privileged from disclosure. A party is sometimes estopped from proving facts and these facts are therefore inadmissible. The exclusion of evidence of opinion and of extrinsic evidence of the contents of some documents is again a rule of law. Second, relevant facts are subject to recognised exceptions inadmissible unless they are proved by the best or the prescribed evidence.

> "25. A witness, though competent generally to give evidence, may in certain cases claim privilege as a ground for refusing to disclose matter which is relevant to the issue. Secrets of state, state papers, confidential official documents and communications between the Government and its officers or between such officers are privileged from production on the ground of public policy or as being detrimental to the public interest or service."

**34.** It is thus, absolutely clear that a document to which privilege attaches because of the provisions of sections 126 and 129, though relevant cannot be received in evidence.

**35.** Shri Jethmalani, the learned Counsel appearing for the respondents submits that assuming that all these 21 documents are privileged, still the respondent can lead secondary evidence to prove these documents. In support of this submission, he relies on a judgment of Court of Appeal in England in the case of *Calcraft* v. *Guest* referred to above, particularly on the following observations:—

> "Then comes the next question. It appears that the appellant has obtained copies of some of these documents, and is in a position to give secondary evidence of them; and the question is whether he is entitled to do that. That appears to me to be covered by the authority of *Lloyd* v. *Mostyn.*(1) I need not go closely into the facts of that case. That was an action on a bond which was said to be privileged from

SCC Online Web Edition, © 2025 EBC Publishing Pvt. Ltd.
Page 13        Tuesday, January 07, 2025
Printed For: Office of Ms. Geeta Luthra .
SCC Online Web Edition: https://www.scconline.com
© 2025 EBC Publishing Pvt. Ltd., Lucknow.
-----------------------------------------------------------------------------------------------------------------------------------------------------------

production on the ground of its having come into the hands of the solicitor in confidence, and the learned Judge at the trial allowed the objection, and nobody seems to have quarrelled with it. The plaintiff then tendered in evidence a copy of the bond, and proposed to give secondary evidence of it. This was rejected on the ground that notice to produce was necessary. The plaintiff then proved a notice to produce, the sufficiency of which was disputed. The learned Judge being of opinion that the notice was sufficient, held that the copy was admissible, and the jury found a verdict for the plaintiff for the full amount of the bond, leave being given to the defendant to move to enter a non-suit if the Court should be of opinion that the copy of the bond ought not to have been received in evidence."

**36.** The learned Counsel appearing for the applicant invited my attention to a judgment of a Court of appeal, Wellington in the case of *R.* v. *Uljee*, 1982 (1) N.Z.L.R. 561. In that judgment, the judgment of the Court of Appeal in the case of *Calcraft* referred to above has been discussed in detail. Following observations from that judgment are relevant:—

In *Calcraft* v. *Guest* the evidence held admissible was secondary evidence (copies) of documents (proofs and rough notes of evidence used in a former action) which had been made by the solicitors to a predecessor

Page: 172

in title of one of the parties to a later action. The other party to the later action had accidentally come into possession of the originals for a time and had made the copies. It was held that, although the documents remained, privileged, she was not precluded by the privilege from giving secondary evidence of their contents. It would presumably have followed that she would likewise not have been prevented from tendering the documents themselves as primary evidence if she had retained them.

"The judgment of Lindley MR in *Calcraft* v. *Guest*, however, did not discuss the subject as a matter of principle. The decision was based simply on the authority of (*Lloyd* v. *Mostyn*)[22], 1842 (10) M & W 478 : 152 E.R. 558, where the question was whether secondary evidence could be given of a bond which was being sued on, despite notice to produce the original had not been produced, in reliance on a claim of privilege. Park B said arguendo at pp 481-482: 560 "Where an attorney intrusted confidentially with a document communicates the contents of it, or suffers another to take a copy, surely the secondary evidence so obtained may be produced. Suppose the instrument were even stolen, and a correct copy taken, would it not be reasonable to admit it?"

Mr. Cato pointed out in his argument to us that *Lloyd* v. *Mostyn* the document had not come into existence for the purpose of litigation or of the obtaining of legal advice. It was merely held by an attorney. This difference was not referred to by Lindley MR in *Calcraft* v. *Guest*, and must have been regarded as immaterial or even overlooked.

**37.** The silence of the judgment in *Calcraft* v. *Guest*, on the latter point, combined with the absence of a discussion of principle, diminishes its value as guidance for us. Moreover the doctrine of third party exception to legal professional privilege has been criticised by writers, especially by Mr. J.D. Heydon in a comprehensive Article in (1974 (37) M.L.R. 601)[23]. On the other hand there is the formidable opinion of Wigmore, 2326:

**38.** In the same judgment, it has been further observed as follows:—

**39.** In *England Calcraft* v. *Guest* is accepted authority at present. In *Butler* v. *Board*

SCC Online Web Edition, © 2025 EBC Publishing Pvt. Ltd.
Page 14          Tuesday, January 07, 2025
Printed For: Office of Ms. Geeta Luthra .
SCC Online Web Edition: https://www.scconline.com
© 2025 EBC Publishing Pvt. Ltd., Lucknow.

---

*of Trade*, 1971 Ch. 680 : 1973 (3) All. E.R. 593 Goff, J., naturally accepted it without question in the course of holding that the equitable jurisdiction to restrain breaches of confidence should not be used to prevent the tendering in evidence, in support of a public prosecution, of a solicitor's letter to the accused, which had fallen into the hands of the prosecuting authority. And the Court of appeal referred to that decision with approval in (*R.* v. *Tompkins*)[24], 1977 (67) Cri. App R 181, itself a case of using information in privileged document for the purpose of cross-examination rather than putting the document in evidence. But in a civil case, *ITC Film Distributors Ltd.* v. *Video Exchange Ltd.*, 1982 (2) All. E.R. 241 : 1982 (3) W.L.R. 125, Warner, J., on weighing the competing interests declined to extend *Calcraft* v. *Guest* to documents obtained by a trick practised in the Courtroom. After the rising of the Court one party had contrived to obtain documents brought to the Courtroom by his adversary. He made copies, but Warner, J., would not allow him to use these in evidence.

**40.** It appears that validity of the law laid down by the judgment in the case of *Calcraft* has been doubted. I have not been, pointed out any judgment of the Supreme Court or this Court, where the judgment in the case of *Calcraft* has been considered. So far as the law applied in England is concerned, the authority of the rule laid down by the judgment in the

Page: 173

case of *Calcraft* is accepted. On the other hand, the authority of a long line of judgments of the English Court according absolute protection to the documents covered by legal professional privilege is also accepted. These are obviously conflicting lines or authorities. If a person is permitted to lead secondary evidence of a privileged document, the right of the person who is entitled to the benefit of the privilege is completely destroyed.

**41.** In my opinion, even if it is assumed that secondary evidence of a privileged document can be given, a person who is entitled to the benefit of the privilege should be entitled to move the Court for an order of injunction restraining the third party from leading secondary evidence of that privileged document, before the document is actually used in evidence. If secondary evidence of a privilege document is allowed to be led with no remedy being provided to the person who is entitled to the benefit of that privilege, it will result in destroying the rights created by law in the person for whose benefit the rule of privilege has been adopted. This aspect of the matter has been considered in a judgment in the case of *Lord Ashburton* referred to above. In that case Pape was a bankrupt and his discharge was opposed by amongst other plaintiffs. Mr. Pape had in his possession a number of letters written by Lord Ashburton to his late solicitor, Mr. W. Nocton, which were admitted to be privileged. These letters had been obtained Mr. Pape by serving on one of Mr. Nocton's clerks. Mr. Pape's solicitors, Langford & Redfern, took copies of the letters and gave the original back to Mr. Pape. Lord Ashurton's present Solicitor heard of this and wrote to Langford & Redfern for copies of the letters, and these, after an application in the Bankruptcy Court, were supplied to him. On a motion by Lord Ashburton in the action Neville, J., made an order that the defendant Pape to forthwith hand over to the defendant Nocton all original letters from the plaintiff to the said Nocton or his firm in the defendant Pape's possession or control. And it is ordered that the defendant Pape, Charles William Langford and Thomas Redfern, their servants and agents be restrained until judgment or further order from publishing or making use of any of the copies of such letters or any information contained therein except for the purpose of the pending proceedings in the defendant Pape's bankruptcy and subject to the direction of the Bankruptcy


Court. This exception in the order was struck down by the Appeal Court on an appeal filed by Lord Ashburton. It is clear that the ratio of the decision of *Lord Ashburton's case* was founded upon confidential nature of the contents of the letter written by Lord Ashburton to Mr. Nocton. The Court was concerned to protect that confidence. Following observations from the judgment of Kennedy, L.J., in my opinion, are pertainent:—

> I agree that the better view seems to me to be that although it is true that the principle which is laid down in *Calcraft* v. *Guest* must be followed, yet at the same time, if before the occasion of the trial when a copy may be used, although a copy improperly obtained, the owner of the original can successfully promote proceedings against the person who has improperly obtained the copy to stop his using it, the owner is none the less entitled to protection, because, if the question had arisen in the course of a trial before such proceedings, the holder of the copy would not have been prevented from using it on account of the illegitimacy of its origin. If that is so,

 Page: 174

it decides this case. There is no question here as to the facts, and on them it is quite clear these copies ought never to have got into Mr. Pape's possession in any shape or form.

**42.** It is clear that, therefore, before copy of such privileged document is introduced in evidence, person who is entitled to the benefits of the privilege is entitled to move the Court for preventing that evidence being led. The judgment in Lord *Ashburton's case* was again considered in the case of *ITC Film Distributors Ltd.* referred to above. Perusal of the judgment in that case shows that the law on the subject was discussed in detail and it was held that a party in whose favour the privilege operates can prevent use of the copies of the documents in evidence before they are actually used. In that case, however, the. Court did not actually grant injunction that was sought because the Court found that the copies have already been used in the evidence. Following observations from the judgment of Warner, J., in *ITC Film case* are relevant:—

> I have little doubt that if, on or before October 1, the plaintiffs and Messrs. Clifford-Tumer-for it appears to me that some at least of the documents here in question probably belong to Messrs. Clifford-Turner rather than to the plaintiffs had issued a writ against Mr. Chappell claiming relief on the lines of that granted in *Lord Ashburton* v. *Pape*, 1913 (2) Ch. 469, and had on a motion in that action sought an order for such relief, they would have been held entitled to it.

**43.** It is further to be seen here that the principle involved in the judgment in the case of *Lord Ashburton* was again considered in the judgment in the case of *Goddard* referred to above. In this judgment, the judgment in *Calcraft's case*, the judgment in the case of *Lord Ashburton's case* and the judgment in the case of *ITC Film's case* were discussed in detail. Following observations in the judgment of *Goddard's case* are pertainent:—

> 'If a litigant has in his possession copies of documents to which legal professional privilege attaches, he may nevertheless use such copies as secondary evidence in his litigation: however, if he has not yet used the documents in that way, the mere fact that he intends to do so is no answer to a claim against him by the person in whom the privilege is vested for delivery up of the copies or to restrain him from disclosing or making any use of any information contained in them.'

SCC Online Web Edition, © 2025 EBC Publishing Pvt. Ltd.
Page 16          Tuesday, January 07, 2025
Printed For: Office of Ms. Geeta Luthra .
SCC Online Web Edition: https://www.scconline.com
© 2025 EBC Publishing Pvt. Ltd., Lucknow.
-----------------------------------------------------------------------------------------------------------------------------------------------------

**44.** Thus, it appears to be a settled law that a person for whose benefits the document is treated as privileged is entitled to move the Court seeking an order of injunction restraining the party who is intending to use the copy in evidence from doing so before the copy is actually used in evidence. The only submission that has been made in this regard on behalf of the respondents is that such an injunction can be sought only by an independent suit for delivery of the copies and not by taking out a motion in the same action. In my opinion, the submission is not well founded. It is clear from the judgment in *ITC Film Limited's case* as well as from the judgment in *Goddard's case* that a Notice of Motion in the same action has been entertained. In any case, this is too technical an objection. It is further to be seen that if the Court finds the rights conferred on a person by statute are being defeated, the Court would be justified in invoking its inherent powers to make such order as may be necessary for the ends of justice. The form of the proceedings, therefore, will not be the deciding factor. It is next pointed out by the respondents that 5 of these 21 documents were annexed to the petition and therefore when the Court accepted

 Page: 175

the petition, the documents were used in evidence. In my opinion, the submission is not well founded. The document can be said to be used in evidence when the company petition is taken up for consideration by the Court for admission and not at an earlier stage. Therefore, it cannot be said that till the Court hears the company petition for admission, the documents cannot be said to have been used in evidence. In these circumstances, therefore, as the 21 documents to which these company applications relate are privileged documents and as the applicant has moved this Court for an order preventing the respondents from using those documents in evidence by making these company application, before the Court hears the company petition for admission, the applicant is entitled to an order in its favour restraining the respondents from using the copies of these 21 documents in evidence.

**45.** It is submitted on behalf of the applicant that as copies of these 21 documents were secured by the respondent unlawfully, as the respondents relied on these documents without disclosing the source of these documents, they are not entitled to use these documents in evidence and therefore, this Court in exercise of its discretion should prevent the respondents from using these documents in evidence. In so far as the pleadings are concerned, in paragraph 8 of the affidavit filed in support of the application, the applicant has stated thus:—

"I respectfully submit that both in law and in equity the applicant herein has made out a complete case for the relief's as prayed for. I respectfully submit that this Hon'ble Court will be pleased not to countenance conduct such as that employed by the respondent of deliberately purloining documents which are in the nature of privileged communication and which are confidential and of seeking to improperly and illegally produce the same knowing full well that the said documents cannot be produced in Court for the reasons aforestated. To permit the respondent to produce and refer to the said documents, would in the respectful submission of the applicant tantamount to this Hon'ble Court placing a premium on dishonesty and would encourage conduct, destructive of commercial morality."

**46.** In the affidavit in reply, the respondents have stated thus in paragraph 15:

"With reference to paragraph 8, I deny that the company has made out any case whether at law, still less in equity, as alleged or at all. I categorically deny that the petitioner has purloined any documents and/or privileged documents and/or improperly and/or illegally produced as alleged or otherwise howsoever. There is no


SCC Online Web Edition, © 2025 EBC Publishing Pvt. Ltd.
Page 17        Tuesday, January 07, 2025
Printed For: Office of Ms. Geeta Luthra .
SCC Online Web Edition: https://www.scconline.com
© 2025 EBC Publishing Pvt. Ltd., Lucknow.
-----------------------------------------------------------------------------------------------------------------------------------------------------

dishonesty whatsoever on the part of the petitioner. On the contrary, as is evident from the record, it is the company which is throughly dishonest and has lost its right to continue in its corporate entity."

**47.** It is clear that these documents belong to the applicant. The respondents did not disclose the method adopted by them for obtaining copies of these documents. At the fag end of the arguments of Shri Jethmalani, an affidavit of one Mr. Nikhil Merchant was submitted. Production of that affidavit at that stage was objected to by the applicant. By that affidavit an attempt has been made to disclose the source through which these documents have been received by the respondents. Perusal of that affidavit shows according to the respondents, these documents were supplied by one Behram Rana, who was in the employment of the applicant to one Mr. Mehraboon, J., Irani, who in the affidavit has been

 Page: 176

described as a respected journalist of the afternoon despatch & courier. In my opinion, considering the facts and circumstances of the case as well as two letters which are annexed to the affidavit, the affidavit cannot be taken on record. In the affidavit filed in support of the application as well as in the reply filed to the petition, the applicant has claimed that the respondents are purlonging the documents. As a matter of fact, the respondents should have disclosed the source through which they obtained these copies in the petition itself. The conduct of the respondents of waiting till the argument in reply of Shri Jethmalani were almost over, for submitting the affidavit, in my opinion, is improper to say the least, and therefore, that affidavit cannot be taken on record and therefore, so far as the records stand, no source from which these documents have been secured by the respondents is disclosed. It is clear from the judgment of the Supreme Court in the case of *Pushpadevi* referred to above, that though relevant evidence procured unlawfully is admissible, the Court has discretion to exclude such evidence. In my opinion, the question of exercising such discretion arises when the Court considers admissibility of the documents in evidence. The question of considering the admissibility of the documents in evidence will come when the documents are tendered in evidence. As I have already held that these documents cannot be produced by the respondents, because privilege attaches to them, in my opinion, this question does not arise for consideration in this case, in view of the above finding. The question whether a document, which is relevant, is not to be permitted to be received in evidence by the Court, because the document has been obtained unlawfully would arise, in the case where, there is no bar in the law or constitution for receiving the document in evidence. In such a case though the document is relevant and is also otherwise admissible in evidence, the Court refuses to receive the document in evidence, because the party which seeks to lead evidence has procured the document unlawfully, in exercise of its discretion, The occasion for the Court to exercise such discretion does not arise in case of documents which are privileged, because such documents cannot be tendered in Court.

**48.** There was considerable debate before me, whether in view of the provisions of section 129 of the Evidence Act, privilege attaches to the advice given by the legal department of the applicant. There was also considerable debate whether for construing the term "legal professional adviser" the provisions of the Advocates Act have to be taken into consider. Whether in view of the judgment of the Supreme Court in the case of *Satish Kumar Sharma*, the judgment of this Court in the case of *Bombay Municipal Corporation, Greater Bombay* can be said to be good law. In my opinion, these questions cannot be decided in the present case, because of absence of proper

pleadings. What is contemplated by section 129 is communication between a person and his "legal professional adviser". The applicant in paragraph 25 of its submissions have stated thus:—

"The word "professional" in section 129 is used merely to denote a professionally qualified legal advisor *i.e.* to say a person who is qualified to give legal advise."

**49.** It is, thus, clear that even according to the applicant in order that an advice given by an internal legal department of the applicant becomes entitled to protection under section 129, that advice must be given by a



Page: 177

person who is qualified to give legal advice. Therefore, for deciding whether the internal legal department of the applicant consists of persons who are qualified to give legal advice, it was for the applicant to disclose the details of the qualification of the persons who are working in their internal legal department. These facts are within the special knowledge of the applicant. Therefore, it is only the applicant who can disclose these facts. Perusal of the affidavit filed in support of the motion shows that no such details have been disclosed in the affidavit filed in support nor is there any material placed on record in the rejoinder filed in this company application on behalf of the applicant. I find that the applicant have not even claimed that the personals working in its legal department, who have given advice, are qualified to give legal advice. In my opinion, therefore, in the absence of such necessary pleadings that question cannot be decided. In any case, for the purpose of deciding these company applications, it is also not necessary for me to consider this question, because I have already held above that all the 21 documents to which these company applications relate are privileged under the provisions of section 126 and section 129 of the Evidence Act, because they came into existence in anticipation of the litigation either for seeking legal advice or for being used for the purpose of defence or prosecution of the legal proceedings, and therefore, whether because these documents also contain advice given by the internal legal department of the applicant, therefore for that reason also they are privileged or not loses its significance.

**50.** For all these reasons, the company applications are granted in terms of prayers (a) & (b). Company applications are disposed of.

**51.** Parties to act on simple copy of the order duly authenticated by the Company Registrar as a true copy.

**52. Order accordingly.**

———

**Disclaimer:** While every effort is made to avoid any mistake or omission, this casenote/ headnote/ judgment/ act/ rule/ regulation/ circular/ notification is being circulated on the condition and understanding that the publisher would not be liable in any manner by reason of any mistake or omission or for any action taken or omitted to be taken or advice rendered or accepted on the basis of this casenote/ headnote/ judgment/ act/ rule/ regulation/ circular/ notification. All disputes will be subject exclusively to jurisdiction of courts, tribunals and forums at Lucknow only. The authenticity of this text must be verified from the original source.